UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ZACHARY BALLARD** | **CASE NO. 2:22-CV-06255** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE CO** | **MAGISTRATE JUDGE LEBLANC** |

MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 22] filed by defendant Greenwich Insurance Company ("Greenwich"). Plaintiff Zachary Ballard opposes the motion. Doc. 24.

I.
BACKGROUND

This suit arises from a motor vehicle accident that occurred in Calcasieu Parish, Louisiana, on November 24, 2021. On that date plaintiff was a passenger in a 2019 Ford F-550 while in the course and scope of his employment with Utility Lines Construction Services, LLC ("ULCS"). Doc. 1, att. 3, ¶¶ 3–4. Joel Thibodeaux allegedly lost control of his own vehicle and crossed the median, striking the vehicle in which plaintiff was riding. *Id.* at ¶ 3. The accident resulted in Thibodeaux's death as well as physical and mental injury to plaintiff. *Id.* at ¶¶ 3, 6.

Plaintiff filed suit in state court against Thibodeaux's insurer (State Farm Automobile Insurance Company) as well as ULCS and Greenwich, as UM carrier for ULCS. Greenwich and ULCS removed the matter to this court on the basis of diversity

jurisdiction, 28 U.S.C. § 1332. Doc. 1. The matter is set for jury trial before the undersigned on June 9, 2025, and Greenwich is the sole remaining defendant.[1] Greenwich now moves for summary judgment, arguing that there was no UM coverage in effect at the time of the accident. Doc. 22. Plaintiff opposes the motion. Doc. 24.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

---

[1] Plaintiff subsequently dismissed his claims against ULCS and his claims against State Farm were dismissed for failure to take a default 60 days after service. Docs. 7, 15.

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under Louisiana law, a rejection of UM coverage or selection of lower limits is only effective if made on a form prescribed by the commissioner of insurance. La. R.S. § 22:1295(1)(a)(ii). Currently, the insured must do the following to validly execute such a waiver: (1) initial the selection or rejection of coverage chosen; (2) print the name of the named insured or legal representative; (3) sign the name of the named insured or legal representative; (4) fill in the insurer's name, group name, or logo; and (5) fill in the date. *Dotson v. Price*, 399 F.Supp.3d 617, 622 (E.D. La. 2019). Additionally, if limits lower than policy limits are chosen, then the amount of coverage selected for each person and accident must be filled in. *Id.*

ULCS is a subsidiary of Asplundh Tree Expert, LLC ("Asplundh"). Greenwich issued Commercial Automobile Policy No. RAD943783703 to Asplundh for the coverage period August 1, 2020, to August 1, 2021. Doc. 22, att. 3. Ann Ercolani executed the UM waiver form on behalf of Asplundh on July 9, 2020, rejecting UM coverage in connection

with that policy. Doc. 22, att. 4. Plaintiff does not challenge the adequacy of this waiver for the 2020 policy. Instead, he maintains that the policy was not renewed with the UM waiver for the following year—instead, a new policy was created with no waiver and was in effect at the time of plaintiff's accident on November 24, 2021.

Prior to August 1, 2021, Asplundh's insurance broker Edward T. Cutter of AON submitted a document entitled "Primary Casualty Renewal Submission" to Greenwich's parent company, AXA XL. Doc. 22, att. 9. This was done for the purposes of renewing Asplundh's casualty policies, including the 2020 commercial automobile policy. Doc. 22, att. 8, ¶ 7. In response AXA senior underwriter Kevin Swann sent a Casualty Program Proposal on June 16, 2021. Doc. 24, att. 4; doc. 24, att. 2, p. 34. A policy was then issued with effective dates August 1, 2021, through August 1, 2022, and provides that it is a "renewal policy." Doc. 22, att. 5, pp. 39, 47. The number on this policy is RAD943783704, with only the final digit changing from the previous policy. *See id.* at 2. As plaintiff notes, the 2021 policy added coverage for 298 vehicles (to a total of 25,126 covered vehicles).[2] *See* doc. 22, att. 9, p. 12. Policy premiums increased from $176,999.00 to $185,000.00 between the two policy years. *See id.* at 47; doc. 22, att. 3, p. 37.

Under Louisiana law, "Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create

---

[2] Plaintiff also contends that the 2021 policy added coverage for 23 named companies "plus countless others," but the Additional Insured Endorsements are identical between the 2020 and 2021 policies. *Compare* doc. 22, att. 3, pp. 432–49 *with* doc. 22, att. 5, pp. 446–63. Additionally, the 2021 policy only contains only three more forms than the 2020 policy. Doc. 25, att. 2. Cutter testified that he submitted a renewal form to AXA and did not attempt to obtain quotes from other insurers, because "[t]he decision was made by the client not to market the program." Doc. 24 att. 2, pp. 16–19.

a new policy and do not require the completion of new uninsured motorist selection forms." La. R. S. § 22:1295(a)(ii). Accordingly, an insured can modify the policy without creating a new one during its term and there is no need to execute a new UM coverage waiver unless these changes alter the limit of liability. *Guillory v. Progressive Ins. Co.*, 117 So.3d 318, 323 (La. Ct. App. 3d Cir. 2013). Under the statute, however, "a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer." La. R. S. § 22:1295(1)(a)(ii). Changes beyond those to the limit of liability can thus result in the creation of a new policy after the term of the original expires, if the insured completes a new application on the form required by the insurer. *Guillory*, 117 So.3d at 323–24. In addressing whether a policy is a renewal or new policy under Louisiana law, courts have looked to how the policy identifies itself, the nature of the form completed by the insured for the alleged new policy, and the extent of negotiations and changes between the two policies. *See Nordstrom v. N.Y. Marine and Gen. Ins. Co.*, 287 So.3d 64, 71 (La. Ct. App. 4th Cir. 2019). Whether a policy is a renewal or whether it has been submitted as a new application is a factual question. *Hart v. Mabou*, 323 So.3d 939, 944 (La. Ct. App. 3d Cir. 2021).

The 2021 policy was obtained after the insured's broker completed a "Primary Casualty Renewal Submission." AXA responded to this submission with a "Casualty Program Proposal," but the declarations page of the resulting policy indicates that it is a renewal.[3] Although the 2021 policy includes minor extensions in coverage, the limits of

---

[3] Additionally, Asplundh's broker testified that this was just "the terminology [that] AXA XL uses for its quotation." Doc. 24, att. 2, p. 34.

liability are the same and the terms are largely undistinguishable. Finally, the two policy numbers are identical but for the last digit. Successive numbering of policy numbers does not, by itself, reflect the creation of a new policy. *Hayes v. De Barton*, 211 So.3d 1275, 1280 (La. Ct. App. 3d Cir. 2017). Accordingly, the undisputed facts show that the 2021 policy was a renewal and that the UM waiver executed in 2020 was still effective.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 22] will be **GRANTED** and all remaining claims in this matter will be **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers on the 2nd day of October, 2024.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE